IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| STANLEY WAYNE GLOVER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | 2:12-CV-1858-AKK |
| SOCIAL SECURITY ) | |
| ADMINISTRATION, ) | |
| COMMISSIONER, ) | |
| ) | |
| Defendant. | |

MEMORANDUM OPINION

Plaintiff Stanley Wayne Glover brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence and, therefore, **AFFIRMS** the decision denying benefits.

I. Procedural History

Glover filed his applications for Title II disability insurance benefits and Title XVI Supplemental Security Income on April 24, 2009, alleging a disability onset date of April 4, 2008 due to pain in his feet, pain in his back after standing,

and an inability to "walk but for a very short distance or time." (R. 91, 98, 110). After the SSA denied his applications on August 19, 2009, Glover requested a hearing. (R. 46-57, 62-63). At the time of the hearing on December 7, 2010, Glover was 53 years old, had a high school diploma, and past relevant medium, skilled work as a floor layer, medium unskilled work as a press machine operator and laborer, medium semi-skilled work as a high pressure washer, and heavy work as a steel fabricator. (R. 30, 31, 40). Glover has not engaged in substantial gainful activity since April 4, 2008. (R. 110).

The ALJ denied Glover's claim on December 21, 2010, which became the final decision of the Commissioner when the Appeals Council refused to grant review on March 13, 2012. (R. 1-5, 12). Glover then filed this action pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894

F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). A

physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

> (1) whether the claimant is currently unemployed;
>
> (2) whether the claimant has a severe impairment;
>
> (3) whether the impairment meets or equals one listed by the Secretary;
>
> (4) whether the claimant is unable to perform his or her past work; and
>
> (5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work

the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

### IV. The ALJ's Decision

In performing the Five Step sequential analysis, the ALJ initially determined that Glover had not engaged in substantial gainful activity since his alleged onset date and therefore met Step One. (R. 14). Next, the ALJ acknowledged that Glover's severe impairments of "essential hypertension and a history of migraine headaches" met Step Two. *Id*. The ALJ then proceeded to the next step and found that Glover did not satisfy Step Three since he "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." *Id*. at 15. Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where he determined that Glover

> has the residual functional capacity [RFC] to perform light work [ ]. The claimant can lift and/or carry or push and/or pull up to twenty pound[s] occasionally and up to ten pounds frequently; sit for two hours at one time and up to eight hours in an eight hour workday; stand for up to two hours at one time and six hours in an eight hour workday; and, can handle and finger bilaterally on a constant basis. The claimant would have no more than moderate limitations in basic mental work activities such as with: understanding, remembering and carrying out simple instructions; use of judgment; responding appropriately to supervision, co-workers and unusual work situations; dealing with routine changes in the work setting; and, responding to customary work pressures.

(R. 15).  In light of Glover's RFC, the ALJ held that Glover was "unable to perform any past relevant work." (R. 19).  The ALJ then moved on to Step Five where he considered Glover's age, education, work experience, and RFC, and determined that there are "jobs that exist in significant numbers in the national economy that claimant can perform." *Id.*  As a result, the ALJ answered Step Five in the negative and determined that Glover is not disabled. (R. 19); *see also McDaniel*, 800 F.2d at 1030.

### V. Analysis

The court turns now to Glover's contentions that the ALJ erred because the 1) RFC finding is not based on substantial evidence and 2) medical vocational guidelines ("GRIDS") dictate a disability finding.  Doc. 8 at 6-12.  For the reasons stated below, the court finds that the ALJ's opinion is supported by substantial evidence.

A.   *Glover's RFC*

　　1. Physical RFC

Glover's first contention of error is that the ALJ failed to properly consider the consultative physician Dr. Decontee Jimmeh's opinion in determining Glover's RFC for light work.  Doc. 8 at 6-8.  Specifically, Glover contends that Dr. Jimmeh's opinion "arguably supports a full range of sedentary

work at best." Doc. 8 at 10.  After reviewing the record and Dr. Jimmeh's report, the court finds Glover's contention unpersuasive.

Dr. Jimmeh completed a consultative examination and noted that Glover was independent with activities of daily living including caring for his elderly mother, and had negative straight leg raises, increased tone and tenderness in the lumbar paraspinal muscles, mild decreased range of motion in the dorsolumbar spine, mild difficulty getting on and off of the examination table, shortness of breath, high blood pressure, chest pain, arthritis pain in hands, knees, shoulder, and feet, a normal gait, and the ability to heel and toe walk without assistance and to bend at the waist and touch his toes.  R. 160-61.  Based on his examination, Dr. Jimmeh diagnosed Glover with "chronic low back, likely secondary to degenerative spine changes," right hand numbness likely due to carpal tunnel syndrome, and "irregular heart beat per patient report," and opined that Glover "could stand or walk less than 6-8 hours during an 8 hour day with frequent breaks," "sit for 8 hours with frequent breaks," and "should avoid lifting in order to prevent exacerbation of symptoms." Doc. 161.

Based on the court's review of the record, the substantial evidence supports the ALJ's decision to reject Dr. Jimmeh's opinion.  In determining how much weight to assign medical opinions, the ALJ must consider, among other

things, the extent to which the doctor presents medical evidence and explanation supporting his opinion, and whether the opinion is consistent with the record as a whole.  C.F.R. §§ 404.1527(c), 416.927(c).  Furthermore, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983).  This is precisely the case here because the scarce record fails to support Glover's disability contention.

Glover's medical records consist of two evaluations in 2010 and nothing in the treatment entries substantiates Dr. Jimmeh's opinion that Glover can perform only light work.  The first evaluation occurred during Glover's June 24, 2010 visit to the University of Alabama Hospital emergency room where he complained of a "pounding headache."  (R. 177).  The physician noted a normal head CT scan, "no signs of intracranial hemorrhage" or acute disease, prescribed Tylenol, and discharged Glover in stable condition with instructions to take his blood pressure medication.  *Id.*  The only other treating records derive from Glover's visit to Birmingham Health Care for evaluation of his hypertension where the physician remarked that Glover "says his [headaches] are improved since his [blood pressure] has been controlled. . . . Patient takes Goody's powder or Tylenol with good results." (R. 245).  Other than the presence of bursitis in

the Glover's right elbow, the physician noted normal extremities, muscle strength, and range of motion and counseled Glover to cease "drug activity as this exacerbates his [hypertension] and puts him at risk for stroke." (R. 246). There was no indication in the record that Glover complained of knee problems. *See* R. 245-46.

Based on the court's review of the medical records and Dr. Jimmeh's treatment notes, the ALJ's decision to assign Dr. Jimmeh's opinion "little weight" is supported by substantial evidence. (R. 18). The ALJ considered Dr. Jimmeh's opinion and assigned it "little weight" because Dr. Jimmeh

> apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Further, his opinion is not only inconsistent with the rest of the medical evidence of record, he had no medical records to review and based his entire assessment on the subjective complaints of the claims.

(R. 18). The medical record is void of any evidence that suggests that Glover cannot perform light work. To make matters worse, Glover's activities of daily living are inconsistent with his disability claim since he cared for his elderly mother. Likewise, Dr. Jimmeh's opinion is not bolstered by the only diagnostic imaging in the record, an x-ray of Glover's lumbar spine on August 17, 2009 which was "normal" (R. 163), and which belies Dr. Jimmeh's contention that

9

Glover's chronic back pain was likely due to degenerative spine changes. These treatment notes and diagnostic imaging are inconsistent with Dr. Jimmeh's opinions, and provide substantial evidence to support the ALJ's decision.

Glover also contends that the ALJ erred in "giving some weight to the State Agency opinion." Doc. 8 at 9. The state agency reviewing physician, Dr. Robert Heilpern, completed a physical summary on August 19, 2009. Dr. Heilpern considered Dr. Jimmeh's opinion but gave it little weight because "[i]t is not supported by the total evidence in [the] file" and concluded that Glover had "no impairment." (R. 164). An ALJ must consider the findings of a state agency medical or psychological consultant, who is considered an expert, and must explain the weight given to such findings in the same way as with other medical sources. See 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). The ALJ gave Dr. Heilpern's opinion "some weight, in so much that they are consistent with the determination made herein." (R. 18). Therefore, in finding that Glover was not impaired, which is consistent with the evidence, the ALJ did not err in assigning Dr. Helipern's opinion some weight.

The court concludes the ALJ's decision to give little weight to Dr. Jimmeh's report is in accordance with the pertinent legal standards and is supported by substantial evidence in the record. Because the ALJ did not err in

giving little weight to Dr. Jimmeh's report, contrary to Glover's contention, the ALJ was not required to incorporate the need for frequent breaks into his RFC finding, present a hypothetical to the vocational expert regarding sedentary work, or to find Glover unable to perform light work.

2. *Mental RFC*

Glover contends that the ALJ erred in his finding of "moderate limitations in basic mental work" because the term "moderate" applies "only to a consideration of mental impairments under Psychiatric Review Technique (PRT) in a consideration of the Listings." Doc. 8 at 11; (R. 15). In short, Glover asserts that the term "moderate" has no counterpart when considering a claimant's RFC. Because the ALJ found that Glover had additional limitations on his ability to perform light work, he elicited testimony from a vocational expert regarding whether an individual with Glover's RFC could perform other work in the national economy. (R. 41). The ALJ's hypothetical to the vocational expert included, among other things, if an individual with "moderate limitations in mental basic work activities of understanding, remembering, and carrying out simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, dealing with changes in a routine work setting and responding to customary work pressures" would be able

to perform other work. (R. 41). Without asking for clarification of the meaning of moderate, the vocational expert answered in the affirmative and provided examples of representative jobs. (R. 41-42). Furthermore, Glover's counsel had the opportunity to question the vocational expert as to the meaning of moderate, but failed to do so. Glover has failed to show that the vocational expert did not understand the meaning of moderate in the context of the Glover's RFC. Therefore, the ALJ's hypothetical was proper and is supported by substantial evidence.

B.  *The Medical Vocational Guidelines (Grids)*

Finally, Glover contends that his inability to transfer skills and "medical [ ] record [that] arguable supports a full range of sedentary work at best" would allow Glover to "readily 'grid [ ].'"[1] Doc. 8 at 11. Glover's argument is unavailing because it rests upon his erroneous assertion that the evidence establishes that he is restricted to performing sedentary work. As the court determined, *supra*, the ALJ's decision that Glover could perform light work is

---

[1] The Medical-Vocational Guidelines, (the "grids") found at 20 C.F.R. Part 404, Subpart P, Appendix 2, are used to make determinations of disability based upon vocational factors and the claimant's residual functional capacity when the claimant is unable to perform his vocationally relevant past work. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(a). Such determinations, however, are only conclusive when all of the criteria of a particular rule are met. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(a).

supported by substantial evidence. Because the ALJ properly gave Dr. Jimmeh's report little weight and found that Glover was capable of performing work at the light exertional level, Glover cannot establish disability based on the grids. *See*, Medical-Vocational Rule 202.00. Therefore, Glover's argument fails.

Ultimately, Glover must meet his burden of proving that he is disabled. *See* 20 C.F.R. § 416.912(c). Notwithstanding Glover's unsubstantiated assertions to the contrary, the record evidence simply does not support his disability claim. Therefore, the court finds that the ALJ's decision is supported by substantial evidence.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Glover is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

Done the 26th day of September, 2013.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE